**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ORION LABS TECH, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **A-25-CV-1100-RP** |
| | § | |
| **SPRINKLR, INC.,** | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

**REPORT AND RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant Sprinklr, Inc.'s Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 25), Plaintiff's Opposed Motion for Leave to File a Sur-Reply in Further Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 31), and all related briefing.[1] After reviewing the pleadings and the relevant case law, the undersigned submits the following Report and Recommendation to the District Judge.

## I.    BACKGROUND

Orion accuses Sprinklr of directly and indirectly infringing five patents: U.S. Patent No. 10,110,430; U.S. Patent No. 10,462,003; U.S. Patent No. 10,924,339; U.S. Patent No. 11,127,636; and U.S. Patent No. 11,258,733. Dkt. 24 (FAC) ¶ 1. The '430, '003, and '339 Patents are titled "Intelligent Agent Features for Wearable Personal Communication Nodes." *Id*. The '430 Patent is a continuation of the '430 Patent, and the '339 Patent is a continuation of the '003 Patent. *See* '430

---

[1] The motion to dismiss was referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits, and the motion for leave was referred for disposition pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Text Orders dated October 1, 2025.

Patent, '430 Patent, '339 Patent. FAC ¶ 1. The Abstract of these patents describe the invention:

> Systems, methods, apparatus and software enable intelligent agent features for user nodes that are members of a communication group. Instructions instantiate an intelligent agent node as a member of the communication group. Each intelligent agent node can be instantiated by a communication group management system, an intelligent agent system and/or by one or more of the communication group members, for example by executing software on one or more computing systems or devices. A variety of services and other assistance can be provided by intelligent agent member nodes, including recording communications, auditing communications, providing audio transcription, annotating media, and paging communication devices, including communication nodes that are not members of the communication group. Communications between personal communication nodes and any intelligent agents can be secure.

The '636 Patent is titled "Bot Group Messaging Using Bot-Specific Voice Libraries." FAC ¶ 1. Its Abstract describes its claim invention:

> A method includes receiving, by a group messaging service, a message including recorded audio and a first group identifier, and determining that the group includes a bot. The method also includes determining whether the bot is a user bot responsive to a user node in the group or a group bot responsive to each of the one or more user nodes, selecting a bot voice library to process the recorded audio, sending, by the group messaging service, the recorded audio to the determined user bot or group bot, processing the recorded audio to produce enhanced text, performing, by the determined user bot or group bot, one or more designated actions corresponding to one of the recorded audio and the enhanced text, and sending, by the determined user bot or group bot, an audio reply to the group messaging service.

The '733 Patent is titled "Transcription Bot for Group Communications." FAC ¶ 1. Its Abstract describes its claimed invention:

> A group communication service receives user node communications from and distributes user node communications to members of a communication group. The communication group members comprise a plurality of user nodes. The group communication service then receives an audio transcription request from one or more of the plurality of user nodes. In response to receiving the request, group communication service launches a bot node member of the communication group configured to deliver transcribed content messages to one or more destination services. The group communication system then receives an audio content message from one or more of the plurality of user nodes and delivers a transcribed content message of the audio content message to the one or more destination services over the bot node member of the communication group.

Orion alleges that Sprinkler uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its "intelligent digital agents," including its "Sprinklr Service." FAC ¶ 20. Sprinkler describes its Sprinkler Service as an "AI-powered customer service platform that unifies customer queries from all traditional and modern support channels — like voice, digital and social media." FAC ¶ 20. Sprinkler Service, and the other accused products, provide a number of features related to automating customer service, including software for inbound voice contact support, outbound voice contact support, social media contact support, live chat contact support, and community forums. FAC ¶ 22.

Sprinkler has moved to dismiss. Dkt. 25. Sprinklr argues Orion has failed to plead a plausible direct infringement claim, indirect infringement claim, and willful infringement for any of the five asserted patents. Dkt. 25. Orion responded to the motion, Dkt. 27, and Sprinklr filed a reply, Dkt. 30. Orion then sought leave to file a sur-reply, Dkt. 31, which Sprinkler opposed, Dkt. 32, and Orion filed a reply, Dkt. 33. The court **GRANTS** the motion to file a sur-reply.

## II.    APPLICABLE LAW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007).  Rather, a complaint must contain sufficient factual matter, accepted as true,

to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Federal Circuit law applies to the specific question of whether a complaint states a claim of patent infringement on which relief may be granted. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024); *Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216, 1221 (Fed. Cir. 2025). "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *AlexSam*, 119 F.4th at 42. But, "[a] plaintiff is not required to plead infringement on an element-by-element basis." *Adnexus*, 160 F.4th at 1221. "[I]t is enough that a complaint places the alleged infringer on notice of what activity is being accused of infringement." *Id.*; *see also Disc Disease Sols. Inc. v. VGH Sols., Inc.*,

4

888 F.3d 1256, 1260 (Fed. Cir. 2018). Still, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Adnexus*, 160 F.4th at 1221.

## III.    ANALYSIS

### A.    Direct Infringement

"Direct infringement is a strict-liability offense that does not require knowledge of the patent or intent to infringe" and occurs when a party, without authority, "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention" during the patent's term. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1377 (Fed. Cir. 2017); 35 U.S.C. § 271(a).

Sprinklr argues Orion has failed to adequately plead direct infringement of any claim for all of the five asserted patents. Orion attached an "Evidence of Use" claim chart to its Second Amended Complaint. Dtk. 24-1. Orion later served the Claim Chart as its preliminary infringement contentions. The Claim Chart provides an element-by-element application of each asserted claim to the accused products. Nonetheless, Sprinklr argues Orion has failed to describe certain elements of the asserted claims.[2] Orion responded to Sprinklr's motion, explaining where those elements were described in the Claim Chart or in the citations within the Claim Chart. Sprinklr then argued that Orion's evidence does not support its assertions. Sprinklr is in effect asking the court to take a summary-judgment level analysis of Orion's pleading and evidence.

This is far beyond what is required to plead patent infringement. *See Adnexus*, 160 F.4th at 1221 ("A plaintiff is not required to plead infringement on an element-by-element basis."). Orion

---

[2] Sprinklr also spends a portion of its brief criticizing Orion's pleadings for reasons unrelated to the basis of its motion. The court strongly admonishes Sprinklr not to waste the court's time and to keep its arguments relevant to its motion.

is only required to put Sprinkler on notice of what is accused and why. *See id.* Orion is not required to prove its case at the pleading stage.

Nonetheless, the court has reviewed the parties' briefs and exhibits and determined that Orion adequately pleaded direct infringement.

### 1.    The '430, '003, and '339 Patents

These patents contain overlapping elements. Although Sprinklr made its arguments separately, Orion responded to them collectively by element allegedly not pleaded. The undersigned will do the same.

Sprinkler argues that Orion failed to allege that an "intelligent agent" or "virtual agent" performs a "recording and auditing" or "transcribing" function. Sprinklr also argues that Orion's evidence supporting its assertions in its Claim Chart is not tied to the Accused Products. In response, Orion points out that Sprinklr admits that Orion pleaded that the Accused Products store recording and provide voice call transcripts. Orion argues Sprinklr is trying to force Orion to prove its infringement allegations without the benefit of discovery. Orion also points to the evidence cited in its Claim Chart that it believes demonstrates the presence of the element.

Orion alleged "Sprinklr Service's AI bot can record and transcribe speech using speech-to-text technology. Stored transcripts can be reviewed by other group members to identify gaps and opportunities for agent improvements." *See* Dkt. 24-1 at 2. Orion is not required to prove its infringement contentions at this stage, nor is it even required to plead its claims on an element-by-element basis. Orion has adequately pleaded its claim.

Sprinklr also argues some claims require a "non-transitory computer readable storage medium" with "a distributed group communications application stored thereon" but Orion failed to address this limitation in its Claim Chart. In response, Orion points out that "virtual programs—

indeed, all computer programs—are stored on non-transitory computer-readable storage mediums." Dkt. 27 at 15. Sprinklr replies that Orion has accused software, not hardware. Orion then responds that the Federal Circuit rejected a similar noninfringement argument in *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108 (Fed. Cir. 2002).

While Sprinklr's argument may be successful at summary judgment, it is premature to address at this stage. The undersigned will not recommend granting Sprinklr's motion on this basis.

Finally, the '003 Patent requires the intelligent agent "perform[] a service." Orion alleged that "Sprinklr's AI bots can gather information and provide responses to customers ('performing a service'). The AI bots can also transfer the conversation to help-desk personnel if requested ('performing a service')." *See* Dkt. 24-2 at 6. Sprinklr argues there is no support in the specification that the claimed "service" includes gathering information, providing responses, or transferring calls. Dkt. 25 at 14. Sprinklr asserts the specification only supports "*recording* communications, *auditing* communications, providing audio *transcription*, *annotating* media, and *paging* communication devices" and "voice-command-based assistance features" as services. *Id*.

Once again, Orion is not required to prove its infringement contentions at this stage, nor is it even required to plead its claims on an element-by-element basis. Orion has adequately pleaded its claim. Sprinklr's argument that limitations from the specification should be read into the claims can be addressed at claim construction.

### 2.   The '636 and '733 Patents

Sprinklr first argues Orion fails to allege the "sending . . . the modified message to the bot member" element. Sprinklr argues that Orion contradicted the claims and pled itself out of court because it alleged that after an audio is transcribed, "the transcript is delivered to the agent in a format that the bot can use." Dkt. 25 at 17; *see* Dkt. 24-4 ('636 Claim Chart) at 8. Orion responds

that the publicly available information does not reveal exactly how the transcript is delivered from the bot used by the centralized group messaging service back to the bot located on a human agent's local device. Dkt. 27 at 16. Orion argues that it has adequately pleaded the element because the transcriptions are returned to the bot member that operates on the human agent's local device and if it is provided in a format that the bot can use, it is sent to the bot member. Dkt. 27 at 16-17.

Orion has satisfactorily pleaded this element. Sprinklr's argument is better addressed at summary judgment after claim construction.

Sprinklr asserts Orion failed to plausibly allege that the accused Sprinklr software "launch[es] the bot node member to deliver transcribed content messages to a destination service" or "deliver[s] a transcribed content message of the audio content message to the destination service via the bot node member." Dkt. 25 at 19. Sprinklr argues that Orion's cited evidence demonstrates that the transcribed messages are actually created in the alleged "destination service." *Id*. Orion alleged Sprinklr's "Voice IVR component uses speech recognition to transcribe voice input and deliver the transcribed phrases to the Care Console ('destination service') for use by a live agent." Dkt. 24-5 at 4. Orion argues that Sprinklr is trying to use Orion's lack of access to source code to its advantage.

Again, Sprinklr's argument goes to Orion's proof, not its allegations. Orion has satisfactorily pleaded this element. Sprinklr's argument is better addressed at summary judgment after claim construction.

Finally, Sprinklr argues Orion failed to identify "a memory device" that "stor[es] instructions" in addition to "a processor," as required by the '636 and '733 Patents. This issue is nearly identical to the issue regarding a "non-transitory computer readable storage medium" of the '430, '003, and '339 Patents. While Sprinklr's argument may be successful at summary judgment,

it is premature to address at this stage. The undersigned will not recommend granting Sprinklr's motion on this basis.

### B.    Indirect Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Inducement "requires knowledge that the induced acts constitute patent infringement." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). For a complaint to properly allege inducement, the "complaint must plead facts plausibly showing that the accused infringer "specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Lifetime Indus.*, 869 F.3d at 1379 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

> Contributory infringement occurs when a party:
>
> offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use . . . .

35 U.S.C. § 271(c). Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). To state a claim for contributory infringement, a complaint must adequately allege: "(1) the defendant had knowledge of the patent in suit, (2) the defendant had knowledge of patent infringement, and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial non-infringing use." *AlexSam*, 119 F.4th at 47 (citation modified).

### 1.    Underlying Direct Infringement

Sprinklr first argues Orion failed to adequately plead direct infringement and therefore cannot plead indirect infringement. The court has already addressed those arguments.

### 2.    Actual Knowledge

Next, Sprinklr argues Orion failed to plead Sprinklr had actual knowledge of the asserted patents. Sprinklr describes Orion's allegations as "bare assertions that amount to little more than formulaic recitations of the elements of induced infringement." Dkt. 25 at 22 (citing *Iqbal*, 556 U.S. at 680-81). Orion pleaded that Sprinklr has had knowledge of the patents since the suit was filed. Orion also pleaded that Sprinklr has a policy of willful blindness to other's patent rights. But Orion pleaded no facts that support the existence of such a policy.

Orion has failed—at this time, without the benefit of any discovery—to adequately allege pre-suit knowledge of the asserted patents. Accordingly, the court will recommend Orion's *pre-suit* indirect infringement claims be dismissed.

### 3.    Substantial Non-Infringing Uses

Sprinkler similarly argues Orion failed to adequately allege any substantial non-infringing uses to support its contributory infringement claim. Orion pleaded the Accused Products have "special features" identified in paragraphs 20-23 that are not staple articles of commerce suitable for substantial non-infringing use. Paragraphs 20-23 describe, at a very high level, the Accused Products. SAC ¶¶ 20-23. Sprinklr did not identify any non-infringing use of the Accused Products that would rebut Orion's assertion that none such uses exist.

Accordingly, Sprinklr has not shown Orion's post-suit contributory infringement claim should be dismissed.

### C.    Willfulness

To state a claim for willful infringement, a plaintiff must plausibly allege the "subjective willfulness of a patent infringer, intentional or knowing." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). This requires alleging facts to plausibly show the defendant (1) knew of

the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew or should have known, that its conduct amounted to infringement of the patent. *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 20-cv-876, 2021 WL 3931910, at *5 (W.D. Tex. Sep. 1, 2021).

Again, Sprinklr argues Orion failed to plead Sprinklr had knowledge of the patent. As the undersigned previously found, Orion failed to plead Sprinklr's pre-suit knowledge of the Asserted Patents. Orion also failed to plead facts that would show Sprinklr knew or should have known that its conduct amounted to infringement. Orion did not plead, and did not argue that it pleaded, that Sprinklr had or has the culpability required for willfulness. *See Datanet LLC v. Dropbox Inc.*, No. 6:22-CV-1142-OLG-DTG, 2023 WL 7118041, at *6 (W.D. Tex. Oct. 27, 2023) (holding that "knowledge of the patents . . . does not provide the type of culpability required for willfulness"); *see also Fractus, S.A. v. TCL Corp.*, No. 20-cv-97, 2021 WL 2483155, at *4 (E.D. Tex. June 2, 2021) ("Willfulness is a matter of culpability and state of mind, and the degree of culpability required has been described as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate.").

Accordingly, the undersigned will recommend that Orion's willful infringement claim be dismissed.

### D.    Leave to Amend

If the court is inclined to grant any of Sprinklr's motion, Orion requests leave to amend. Orion stated it would add additional detail, but Orion does not describe what that detail would be. Accordingly, the undersigned does not recommend granting Orion leave at this time.

However, the undersigned is recommending that Orion's pre-suit indirect infringement and its willful infringement claim be dismissed without prejudice to amendment if Orion comes

forward with evidence that Sprinklr had pre-suit knowledge of the patents and/or its infringement.

### E.    Conclusion

Sprinklr's motion is not well-received by the court. Its direct infringement arguments are not narrowly tailored to its best arguments. Instead, Sprinklr expects a busy court to take a deep dive into the proof—not the allegations—of its alleged infringement when Orion is not required to prove its allegations at the pleading stage without discovery. The Austin Division saw an overwhelming number of cases filed last year. Parties in all cases would be well-advised to put forth their best—and only their best—arguments to the court.

## IV.    ORDER AND RECOMMENDATION

The court **GRANTS** Plaintiff's Opposed Motion for Leave to File a Sur-Reply in Further Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 31).

The undersigned **RECOMMENDS** the District Judge **GRANT IN PART AND DENY IN PART** Defendant Sprinklr, Inc.'s Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 25).

The undersigned **RECOMMENDS** the Motion be **DENIED** as to Orion's direct infringement claims and post-suit indirect infringement claims and **GRANTED** as to Orion's pre-suit indirect infringement claims and willful infringement claims and those claims be **DISMISSED WITHOUT PREJUDICE**.

## V.    OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See*

*Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED January 28, 2026,

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE

13